IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Sean Givens and Kevin Givens, | ) | C/A No. 2:04-1775-18 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Colleton County Sheriff's Department, | ) | |
| and United States of America, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. Background

On June 4, 2004, plaintiffs Sean and Kevin Givens (hereinafter collectively referred to as "plaintiffs") filed the instant action against defendants Colleton County Sheriff's Department ("CCSD") and the United States of America (the "United States" or "government") alleging false arrest and false imprisonment, seeking damages for mental and emotional distress, loss of employment, loss of enjoyment of life, and pain and suffering.[1] On November 10, 2004, the government filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that this court lacks subject-matter jurisdiction over the case and that plaintiffs have failed to state a claim upon which relief can be granted against the United States. The parties were heard on March 10, 2005, and the court gave plaintiffs additional time and leave to amend their

---

[1] Plaintiffs filed a previous action relating to the same facts discussed below, but this court dismissed that action on February 28, 2003 for lack of jurisdiction over the subject-matter of the case, finding that plaintiffs had not yet exhausted all of their administrative remedies at that time. See Givens v. Colleton County Sheriff's Dep't, C/A No. 2:02-4198-18 (D.S.C. filed Feb. 28, 2003).

complaint to allege federal government involvement if appropriate.[2]  On March 29, 2005, plaintiffs filed their Amended Complaint, and on April 21, 2005, the government again moved to dismiss– essentially on the same grounds as those stated in its original motion. The government supplemented its motion on May 17, 2005, and plaintiffs responded to the motion that same day.  On May 31, 2005, the court notified plaintiffs' counsel that it would treat the government's 12(b)(6) motion as one for summary judgment and instructed plaintiffs to respond within fifteen days if they so desired.  The court now issues its ruling.

## II.  Facts

The facts, taken in a light most favorable to plaintiffs, are as follow.  On November 24, 2000, plaintiffs visited the United States Post Office in Green Pond, South Carolina to purchase a money order.  Later that same day, two men robbed the Green Pond Post Office at gun point.  On November 27, 2000, at the behest of the government, a federal search warrant was issued for the letter containing the money order that Sean Givens purchased on November 24.  On December 6, 2000, Green Pond Postmaster Frances Tovey chose Kevin Givens out of a photo lineup as one of the men who robbed the Post Office.  There was no picture of Sean Givens in the lineup, but Tovey also selected one of Sean's relatives as a participant in the robbery.  As a result of the investigation, on December 13, 2000, plaintiffs were arrested and charged with the Green

---

[2] On January 18, 2005, plaintiffs informed the Clerk of Court's office that they intended to dismiss their claims against CCSD; they confirmed that intention at the hearing on March 10, 2005.  Accordingly, plaintiffs did not name CCSD as a defendant in their Amended Complaint, and the United States is the only remaining defendant.

2

Pond robbery.[3]  Specifically, plaintiffs claim that "20 to 30 law enforcement vehicles surrounded their residence, in full view of their neighbors and families" on the day they were arrested.  (Am. Compl. at ¶ 10.)  Plaintiffs remained in custody at the Colleton County Jail from December 13, 2000 until they were released on March 7, 2001.  Plaintiffs further claim that "Sean Givens was subsequently rearrested and detained for the same charges and thereafter released." (Am. Compl. at ¶ 11.)  Additionally, plaintiffs assert that the government "had no probable cause of their arrests" and that the arrests "were intentional and unlawful."  (Am. Compl. at ¶ 15.)

### III.  Standards of review

There are two standards of review at play in the government's motions: the standard for Rule 12(b)(1) motions to dismiss and the standard for Rule 56 motions for summary judgment.  The government argues that both the claims related to the December 13, 2000 arrest and the claims related to the subsequent rearrest should be dismissed under Rule 12(b)(1), but continues that even if only the subsequent rearrest claims are dismissed under Rule 12(b)(1), the December 13, 2000 arrest claims should be dismissed under Rule 12(b)(6).  Because the government has submitted matters outside the pleading for consideration in its 12(b)(6) motion however, the standard for Rule 56 applies to its

---

[3] Plaintiffs' Amended Complaint only states that "the Defendant, through the Postal Inspector, as well as through agents of various local, state, and federal government entities, arrested Plaintiffs for the armed robbery of the Green Pond Post Office." Plaintiffs do not allege that they were arrested pursuant to federal warrants nor do they allege that they were held in federal custody.  In fact, the Amended Complaint states that plaintiffs were held in the Colleton County Jail.

3

latter argument.[4]

### A.     The government's 12(b)(1) motion

When the United States is a defendant and challenges the subject-matter jurisdiction of the court under Rule 12(b)(1), plaintiffs bear the burden of persuasion on the issue. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) and noting that "the party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity"). Furthermore, "[i]n ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings . . . . [and] is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (internal citations omitted).

### B.     The government's 12(b)(6) motion

Because the government supplemented its 12(b)(6) motion to dismiss with the warrants involved in plaintiffs' original arrests, its motion is properly viewed as one for summary judgment.[5] Summary judgment is only proper when there is no genuine issue

---

[4] Rule 12(b) provides, in relevant part:
> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).

[5] In order to give plaintiffs every opportunity to respond to the government's motion, plaintiffs were notified, on May 31, 2005, that this court would treat the government's motion as one for summary judgment and that they should respond with

4

of material fact. Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). Material facts are those that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (U.S. 1986). An issue is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. This burden may be met through the use of depositions, sworn affidavits, and other discovery materials. Barwick, 736 F.2d at 958. Consequently, in evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-124 (4th Cir. 1990). Once the moving party makes the necessary showing, however, the nonmoving party must go forward and produce evidentiary facts to support its contentions. Barwick, 736 F.2d at 958-959. A "mere scintilla" of evidence is not enough to create a fact issue; there must be evidence on which a reasonable jury might rely. Id. In other words, the nonmoving party cannot create a genuine issue of material fact through "mere speculation or the building of one inference upon another." Id. at 963.

## IV. Analysis

As stated above, the government argues that this court lacks jurisdiction over the subject-matter of both the claims filed relating to the December 13, 2000 arrests (based on a statute of limitations argument) and the claims filed relating to the subsequent arrest (based on a failure to exhaust administrative remedies argument). The court agrees with

---

any arguments and/or supporting affidavits within fifteen days if they so desired. See Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985).

the government as to the disposition of the claims related to the rearrest but declines to answer the statute of limitations question with regard to the original arrests, finding instead that plaintiffs cannot survive summary judgment. Accordingly, the court addresses the government's arguments in reverse chronological order, i.e., it addresses the rearrest claims first, then the original arrest claims.

### A.     Failure to exhaust administrative remedies: the subsequent arrest

The government's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is based on its contention that plaintiffs have failed to exhaust their administrative remedies regarding the rearrest.[6] Section 2675 of Title 28 of the United States Code provides, in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The Fourth Circuit has held this requirement to be jurisdictional and beyond waiver. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)). Furthermore, claims are properly presented to the appropriate federal agency only when they 1) are sufficient to enable the agency to investigate and (2) reveal a sum certain value. Id. at 517; see 39

---

[6] It is worth noting from the outset that only Sean Givens was even alleged to have been rearrested; therefore, he is the only plaintiff with a potential claim as to that incident.

C.F.R. §§ 912.5 and 912.8 (fully incorporating 28 C.F.R. § 14.2(a), which explains presentment to federal agencies); see also Pagel v. United States, 986 F. Supp. 1315, 1321 (N.D. Cal. 1997) (observing same).[7]

Plaintiffs submitted their claims to the United States Postal Service on January 28, 2003 (received by the Postal Service on February 10, 2003) in the form of a Standard Form 95. (See Ex. 2 to Def.'s Mot. to Dismiss.) The "Basis of Claim" sections were identical on plaintiffs' forms, and they read:

> CLAIMANT WAS ARRESTED AND IMPRISONED FROM DECEMBER 13, 2000 TO MARCH 7, 2001 ON CHARGES OF ARMED ROBBERY, SAID CHARGES SUBSEQUENTLY BEING DISMISSED. CLAIMANT, AS A RESULT, WAS FALSELY ARRESTED, FALSELY IMPRISONED, SUSTAINED SEVERE MENTAL AND EMOTIONAL DISTRESS AND ANGUISH, LOSS OF ENJOYMENT OF LIFE, PAIN AND SUFFERING, VIOLATION OF HIS CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE 4TH, 5TH AND 14TH AMENDMENTS.

(Ex. 2 to Def.'s Mot. to Dismiss at 1, 3. Capitalization in original.) The United States Postal Service denied plaintiffs' claims in a letter dated January 6, 2004, referring to them as resulting from the "incident which occurred on December 13, 2000." (See Ex. 4 to Def.'s Mot. to Dismiss at 1.) The government argues that plaintiffs' claims to the Postal Service simply did not put it on notice that there was any rearrest to investigate. Plaintiffs respond that the failure to specifically mention the rearrest in the administrative claim should not be fatal to their present action.

---

[7] The court notes that it need not reach the question in Pagel, i.e., whether certain federal regulations should be treated as jurisdictional requirements, because it finds that plaintiffs have failed to meet the statutory presentment requirements of 28 U.S.C. § 2675(a) as interpreted by controlling precedent.

The court agrees that plaintiffs failed to properly present their claim regarding any rearrest to the United States Postal Service and that the court consequently lacks subject-matter jurisdiction over any such claim. The purpose of requiring administrative exhaustion is to provide the government with sufficient notice to investigate the claim and prepare for settlement negotiations. See Ahmed, 30 F.3d at 517; Charlton v. United States, 743 F.2d 557, 559-60 (7th Cir. 1984). While some courts have held that claimants need not elaborate all possible causes of action or theories of liability, claimants are required to notify the federal agency of the facts that support their claims. See, e.g., Barnson v. United States, 531 F. Supp. 614, 623-24 (D. Utah 1982). In this case, plaintiffs never informed the Postal Service that Sean Givens was rearrested and thus never gave it a chance to investigate whether it should bear the cost of any damages he may have suffered as a result. More to the point of the statute, plaintiffs never gave the Postal Service a chance to apprise itself of the situation for settlement negotiations. Especially in light of the facts discussed below, i.e., those tending to show that the state was in charge of the first arrest (and probably the second arrest), the Postal Service had reason to deny plaintiffs' claim on the scenario plaintiffs submitted but no reason to suspect that either plaintiff was rearrested or under what circumstances they were rearrested.

Plaintiffs cite two district court cases for their argument to the contrary: Boyce v. United States, 942 F. Supp. 1220 (E.D. Mo. 1996), and Emery v. United States, 920 F. Supp. 788 (W.D. Mich. 1996). These cases do not compel a different result as, besides having no precedential value to this court, the reasoning of those cases is consistent with

8

that expressed in this opinion. In Boyce, the court refused to dismiss a claim for loss of consortium made by the primary claimant's spouse in spite of urging by the government that she had failed to present her claim to the appropriate federal agency before filing suit. Boyce, 942 F. Supp at 1224. The court reasoned that because the spouse had notified the government during the administrative process of her claim, because the government had treated her as a claimant, and because the government had negotiated the possible settlement of her claim, it was clear that the purposes of § 2675 had been served. Id. at 1223-24. Likewise in Emery, the primary claimant's agency claim form expressly included the spouse's claim for loss of consortium, thereby putting the government on notice of the claim and giving it an opportunity to investigate. Emery, F. Supp at 791. Both cases are easily distinguishable from the instant situation in that there is no evidence in this case that the Postal Service had any knowledge of Sean Givens' rearrest nor any chance to investigate its role in such arrest. Consequently, the court lacks subject-matter jurisdiction over all claims related to the rearrest mentioned in the Amended Complaint, and those claims must be dismissed.

### B. Summary judgment: plaintiffs' original arrests

The government has also moved, under Rule 12(b)(6), for dismissal of plaintiffs' claims as they relate to the December 13, 2000 arrests on the grounds that plaintiffs were not arrested at that time according to federal authority. The government supplemented its original 12(b)(6) motion on May 17, 2005 with the arrest warrants that facilitated plaintiffs' December 13 detentions.[8] As consideration of the warrants is more

---

[8] The government labeled its supplement as one to its motion under Rule 12(b)(1), but the supplement more directly addresses the government's argument that there was no

appropriate under Rule 56, plaintiffs were notified that the court would convert the government's motion to one for summary judgment and were given a chance to respond.

The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity for false arrest and false imprisonment under limited circumstances:[9]

> The provisions of this chapter [28 U.S.C. §§ 2671 et seq.] and section 1346(b) of this title [28 U.S.C. § 1346(b)] shall not apply to–
>
> . . .
>
> (h) Any claim arising out of . . . false imprisonment [or] false arrest . . . Provided, That [sic], with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter [28 U.S.C. §§ 2671 et seq.] and section 1346(b) of this title [28 U.S.C. § 1346(b)] shall apply to any claim arising, on or after the date of the enactment of this proviso [enacted March 16, 1974], out of . . . false imprisonment [or] false arrest . . . .  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680.  In other words, the government has waived sovereign immunity when officers of the United States empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law commit the torts of false arrest and/or false

---

federal involvement in the original arrests– its 12(b)(6) argument; therefore, the court considers the argument and arrest warrants in that context.

[9] Generally, the United States has waived its sovereign immunity regarding civil actions for money damages through the FTCA for "injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ."  28 U.S.C. § 1346(b).  See also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").

imprisonment against plaintiffs as those torts are defined by South Carolina state law.

In order to recover under a theory of false imprisonment in South Carolina, plaintiffs must establish: (1) that defendant restrained them; (2) that the restraint was intentional; and (3) that the restraint was unlawful. Jones v. Winn-Dixie Greenville, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citing Andrews v. Piedmont Air Lines, 377 S.E.2d 127 (S.C. Ct. App. 1989)). The elements do not include an actual injurious touching; therefore, false imprisonment "may be committed by words alone, or by acts alone or by both, and by merely operating on the will of the individual, or by personal violence, or by both." Id. (citing Gathers v. Harris Teeter Supermarket, Inc., 317 S.E.2d 748 (S.C. Ct. App. 1984)). The tort of false imprisonment is meant to remedy the deprivation of a person's liberty without lawful justification. Thomas v. Colonial Stores, Inc., 113 S.E.2d 337 (S.C. 1960). As a corollary, an action for false imprisonment cannot be maintained where one is arrested by lawful authority. Manley v. Manley, 353 S.E.2d 312 (S.C. Ct. App. 1987). Said another way, "[i]n order to maintain an action for false imprisonment, plaintiff[s] must prove that [they were] arrested and imprisoned without lawful process or authority." Cannon v. Haverty Furniture Co., 183 S.E. 469, 479 (S.C. 1935). The South Carolina Supreme Court has stated that "the fundamental question" is whether probable cause existed to arrest the plaintiffs on the charges brought against them. See Jones v. Columbia, 389 S.E.2d 662, 663 (S.C. 1990). "'Probable cause' is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise." Id. (citing Gathers v. Harris Teeter Supermarket, 317 S.E.2d 748 (S.C. Ct.

App. 1984)). It is important to note that South Carolina follows the minority rule and recognizes the issue of probable cause as a question of fact ordinarily reserved for the jury. See id. (citing Gathers, 317 S.E.2d 748 (S.C. Ct. App. 1984); Parrott v. Plowden Motor Co., 143 S.E.2d 607 (S.C. 1965)).[10]

Plaintiffs cannot survive summary judgment on the first element of their claim. The government has come forward and presented the December 13, 2000 arrest warrants for both plaintiffs, demonstrating that they were arrested for state law violations by a state law enforcement agency. There is no evidence that state agents were acting on behalf of the United States. The arrest warrants show that a Colleton County magistrate found probable cause, based on the sworn testimony of an officer of the Colleton County Sheriff's Office, to believe that both plaintiffs committed armed robbery in violation of S.C. Code Ann. § 16-11-330. It is undisputed that plaintiffs were detained at the Colleton County jail for the duration of their confinement from December 13, 2000 to March 7, 2001. The government has come forward with evidence showing that plaintiffs cannot prove the first element of their claim, and plaintiffs have been unable to refute that evidence and thus unable to raise a genuine issue of material fact. For that reason, summary judgment will be granted in favor of the government.

### C.    Statute of limitations: plaintiffs' original arrests

As alluded to above, because the court finds that summary judgment is appropriate in favor of the government based on plaintiffs' failure to show federal

---

[10] "The majority rule is that the issue of whether there is probable cause is a mixed question of law and fact, to be decided in some instances only by the judge and in others by a combination of judge and jury." Jones, 389 S.E.2d at 663 (citing 35 C.J.S. False Imprisonment § 59 at 761 (1960); 5 Am.Jur.2d Arrest § 49 at 741 (1962)).

involvement in their original arrests, it is not necessary for the court to decide whether plaintiffs' claims are barred by the statute of limitations. As such, in the interests of judicial economy and restraint, the court declines to make such a decision.

### V.  Conclusion

It is therefore, **ORDERED**, for the foregoing reasons, that defendant's motion to dismiss any claims relating to plaintiffs' rearrest is **GRANTED** on the grounds that this court lacks jurisdiction over their subject-matter. It is further **ORDERED** that defendant's motion for summary judgment is **GRANTED** with respect to the claims stemming from plaintiffs' original arrests.

**AND IT IS SO ORDERED**.

                                                                          _____
                                                                          **David C. Norton**
                                                                          **United States District Judge**

**June 28, 2005**
**Charleston, South Carolina**